**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Maasen, | No. CV-19-05736-PHX-DGC (MHB) |
| Petitioner/Movant/Defendant, | No. CR-16-01357-PHX-DGC |
| vs. | **ORDER** |
| United States of America, | |
| Respondent/Plaintiff. | |

Scott Maasen was convicted of concealing bankruptcy assets in Case No. CR-16-01357. He was sentenced to eighteen months in prison and ordered to pay $1,392,000 in restitution. Pursuant to 28 U.S.C. § 2255, he brought this civil action challenging the restitution order entered in the criminal case. Doc. 1; CR Doc. 142.[1] Because a § 2255 motion cannot be used to challenge restitution, Maasen's motion is construed as a petition for writ of error *coram nobis*. *See* Docs. 6, 10.

Magistrate Judge Michelle Burns has issued a report recommending that the petition be denied ("R&R"). Doc. 18. Maasen has filed an objection to which the government has responded. Docs. 19, 20. For reasons stated below, the Court will accept the R&R in part and deny the petition.

---

[1] Citations to documents in the civil action are denoted "Doc." and citations to documents in the criminal case are denoted "CR Doc." Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

1

## I.  Background.

In November 2016, a grand jury indicted Maasen on multiple offenses arising from a $1.5 million loan he had obtained from the Small Business Administration ("SBA") and his subsequent bankruptcy proceedings.  CR Doc. 1.  The superseding indictment charged Maasen with making a false statement to the SBA (count one), conspiracy (count two), transfer and concealment in contemplation of bankruptcy (count three), concealment of assets in bankruptcy (counts four and six), fraudulent transfer of property (count five), and false oath or account in bankruptcy (counts seven through twelve).  CR Doc. 39.  Maasen pled guilty to count four in April 2018.  CR Doc. 84.  On November 13, 2018, the Court sentenced him to eighteen months in prison followed by three years of supervised release.  CR Docs. 122, 125.  The Court also ordered him to pay restitution to the SBA in the amount of $1,392,000 – the outstanding loan balance.  CR Doc. 129; *see also* CR Doc. 120 ¶¶ 25, 72 (presentence report setting forth restitution amount).[2]

Maasen moves to vacate the restitution order pursuant to § 2255(a), which provides that a federal prisoner may obtain relief from his sentence if it was "imposed in violation of the United States Constitution or the laws of the United States[.]"  28 U.S.C. § 2255(a).  Maasen asserts a single ineffective assistance of counsel claim, arguing that his counsel failed to object to the Court's use of the wrong standard for determining actual loss for restitution purposes.  Doc. 1 at 5; CR Doc. 142 at 5.  The Court granted Maasen's request to convert the § 2255 motion to a *coram nobis* petition.  Docs. 6, 10.  Judge Burns concluded in her R&R that the petition should be denied because Maasen has not met the four-part test for *coram nobis* relief.  Doc. 18.

/ / /

/ / /

---

[2] Maasen was released from prison on April 30, 2020.  *See* Doc. 18 at 1 n.2 (citing Doc. 8); Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited May 5, 2021).

## II.     R&R Standard of Review.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The Court "must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  The Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## III.    Discussion.

### A.     Legal Standard for a Writ of Error *Coram Nobis*.

The term "coram nobis" is Latin for "in our presence" or "before us."  *See Nowlin v. United States*, 81 F. Supp. 3d 514, 519 (N.D. Miss. 2015) (citing *Black's Law Dictionary*, at 304-05 (5th ed. 1979)).  At common law, a *coram nobis* writ was used by "a court to vacate its own judgments 'for errors of fact in those cases where the errors are of the most fundamental character, that is, such as rendered the proceeding itself invalid.'"  *Flores v. Washington*, No. 2:18-CV-00177-SAB, 2018 WL 10509378, at *1 (E.D. Wash. Sept. 18, 2018) (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)); *see Raven v. Oklahoma*, No. CIV-16-289-D, 2016 WL 3950959, at *2 (W.D. Okla. June 14, 2016) ("[T]he common law scope of *coram nobis* was a writ from the judgment-issuing court to itself, granting itself power to reopen that judgment.") (quoting *Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013)).

In 1946, amendments to Federal Rule of Civil Procedure 60 expressly abolished *coram nobis* writs.  Fed. R. Civ. P. 60(e); *see Flores*, 2018 WL 10509378, at *1.  Several years later, however, the United States Supreme Court "held that district courts have the power to issue the writ under the All Writs Act[.]"[3]  *Matus-Leva v. United States*, 287

---

[3] The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

3

F.3d 758, 760 (9th Cir. 2002) (citing *United States v. Morgan*, 346 U.S. 502, 506-07 (1954)); *see also United States v. Mischler*, 787 F.2d 240, 241 n.1 (7th Cir. 1986) ("[The] writ of error *coram nobis* is authorized by 28 U.S.C. § 1651 (1981) – the all writs provision of the Judicial Code. While the writ was abolished in 1946 by the amendment of Fed.R.Civ.P. 60(b), it retains its vitality in criminal proceedings.") (citing *Morgan*); *Flores*, 2018 WL 10509378, at *1 (*Morgan* held that the abolition under Rule 60 "applied only to civil writs and that district courts retained authority to issue writs of coram nobis in collateral criminal proceedings"); *United States v. Stine*, No. CR 99-00155-PCT-JJT, 2018 WL 6030977, at *2 (D. Ariz. May 22, 2018) ("A writ of Coram Nobis . . . authorizes a court to vacate its judgment where errors are of the most fundamental character.") (citing *Morgan*).

The Supreme Court has observed that "the All Writs Act is 'a residual source of authority to issue writs that are not otherwise covered by statute,' and that, 'it is difficult to conceive of a situation in a federal criminal case today where the writ would be necessary or appropriate.'" *Stine*, 2018 WL 6030977, at *2 (quoting *Carlisle v. United States*, 517 U.S. 416, 429 (1996)). Indeed, both the Supreme Court and the Ninth Circuit "have long made clear that the writ of error *coram nobis* is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007); *see Morgan*, 346 U.S. at 511 (characterizing the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice"); *Matus-Leva*, 287 F.3d at 760 ("*Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental character."); *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) (describing the writ as "extraordinary").

"In *Hirabayashi*, consistent with the extraordinary nature of *coram nobis* relief, [the Ninth Circuit] adopted the following framework for deciding when the writ should be issued:

> A petitioner must show the following to qualify for *coram nobis* relief: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."

*Riedl*, 496 F.3d at 1006 (quoting *Hirabayashi*, 828 F.2d at 604, and noting that the Ninth Circuit has "repeatedly reaffirmed this framework") (citations omitted). "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F.3d at 760 (citing *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991)).

### B. Judge Burns's R&R.

Judge Burns found that Maasen has met none of the *Hirabayashi* requirements for *coram nobis* relief. Doc. 18 at 4-12. Specifically, Judge Burns concluded: (1) a more usual remedy was available because Maasen had the right to challenge restitution on direct appeal (*id.* at 4-5); (2) Maasen offers no excuse for waiting a year to challenge restitution in this Court (*id.* at 5-7); (3) restitution constitutes a financial injury that is not the sort of adverse consequence supporting the issuance of a *coram nobis* writ (*id.* at 7-8); and (4) Maasen fails to state a claim of ineffective assistance of counsel, and therefore does not demonstrate error of the most fundamental character justifying the extraordinary remedy of a *coram nobis* writ (*id.* at 8-12).

### C. Maasen's Objections.

Maasen objects to Judge Burns's conclusions that he has not satisfied the test for *coram nobis* relief. Doc. 19. The Court will address each of the four *Hirabayashi* requirements.

#### 1. Availability of a More Usual Remedy.

Because a § 2255 motion cannot be used to challenge restitution, the government agrees that the first *Hirabayashi* requirement is satisfied – a more usual remedy is not available. Doc. 12 at 10 & n.3 (citing *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999)); *see also United States v. Thiele*, 314 F.3d 399, 401 (9th Cir. 2002) ("We agree with the district court that *Kramer* controls and that Thiele cannot collaterally

attack his restitution order in a § 2255 motion."). Judge Burns concluded, however, that Maasen fails to meet the first *Hirabayashi* requirement because he "did have the remedy of filing a direct appeal of the restitution order, even though he elected not to do." Doc. 18 at 5. The Court does not agree with that conclusion.

The Supreme Court made clear in *Morgan* that *coram nobis* relief may be available to achieve justice even "after final judgment and exhaustion or waiver of any statutory right of review[.]" 346 U.S. at 511. Consistent with this approach, the Ninth Circuit made clear in *Hirabayashi* that a *coram nobis* writ can provide a remedy "where no other relief *is* available." 828 F.2d at 604 (emphasis added); *see also Riedl*, 496 F.3d at 1005 (*coram nobis* relief may be appropriate "where no more conventional remedy *is* applicable") (emphasis added). In *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005), the government argued that the defendant "did not satisfy this first *Hirabayashi* requirement because he *could have* filed a § 2255 motion while he was still in custody but failed to do so. In other words, the government argue[d] that [the defendant] cannot be eligible for *coram nobis* relief, even though § 2255 relief is clearly not available to him now, because a 'more usual remedy *was* available to him' then." 407 F.3d at 1012 (emphasis in original). The Ninth Circuit rejected this argument, noting that "[o]ther courts have not interpreted this threshold requirement as the government would have us do." *Id.* (citing *Morgan*, 346 U.S. at 512; *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004)). The Ninth Circuit further noted that "the government's argument asks us to adopt a subtle change in the language of the threshold requirement (from 'is unavailable' to 'was unavailable') that would cause a great change in its meaning (from 'unavailable now' to 'unavailable ever')." *Id.* The Ninth Circuit provided this explanation as to why the government's proposed change was not appropriate:

> If the mere fact that a *coram nobis* petitioner could have raised his claim while in custody was sufficient to bar *coram nobis* eligibility, then there would be no need for the second *coram nobis* requirement, which requires the petitioner to establish that 'valid reasons exist for not attacking the conviction earlier.' Taken together, the first and second requirements make

>clear that a petitioner is not barred from seeking *coram nobis* relief simply because he could have sought relief while in custody. Instead, he is given the opportunity to explain why he did not seek relief while in custody, and he is only barred from *coram nobis* eligibility if he fails to show that he had valid reasons for delaying.

*Id.*; *see also Wilson v. United States*, No. 11-60614-CIV, 2011 WL 13134337, at *4 (S.D. Fla. Aug. 16, 2011) (*coram nobis* relief may be available where "a more usual remedy *is not presently available* to correct the error") (emphasis added); *Pruess v. United States*, No. 5:06cv159-V-02, 2011 WL 3444098, at *6 (W.D.N.C. Aug. 8, 2011) ("The Fourth Circuit has explained that to obtain *coram nobis* relief, a petitioner must show . . . that a more usual remedy is not presently available to correct the error[.]") (citing *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988) ("The petitioners in this case have served their sentences. They appealed their cases at each stage of the proceeding. They have no other remedy available other than a writ of error *coram nobis*.")).

The time for filing a direct appeal in this case has long passed. *See* Fed. R. App. P. 4(b)(1)(A) ("a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed"); *United States v. Moore*, No. CR-03-0764-PHX-JAT, 2011 WL 3273593, at *1 (D. Ariz. Aug. 1, 2011) ("For cases in which the defendant does not file a direct appeal, the conviction becomes final fourteen days after judgment is entered."). As noted, Maasen cannot challenge restitution in a § 2255 motion. The Court finds that a more usual remedy is not presently available to Maasen and he therefore satisfies the first *Hirabayashi* requirement. *See Rossini v. United States*, No. 08-692 (JMF), 2014 WL 5280531, at *2 (D.D.C. Oct. 14, 2014) ("Both the petitioner and the government agree that because the petitioner waived his right to an appeal when he accepted the plea agreement, and because he has now completed the various elements of his sentence, the more usual remedies of either a direct appeal or a motion . . . pursuant to 28 U.S.C. § 2255, respectively, are not available."). The Court will reject the R&R in this regard.

7

### 2. Valid Reason for the Delay.

A *coram nobis* petition is not subject to a specific limitations period, but "petitioners are entitled to this relief only if they can 'provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier.'" *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020) (quoting *Kwan*, 407 F.3d at 1012). "[C]ourts have denied relief for unjustified delay where 'the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ.'" *Id.* (quoting *Kwan*, 407 F.3d at 1013). Ninth Circuit "caselaw further reflects that whether a petitioner can *reasonably* raise a claim is determinative of whether delay is justified. That is, where petitioners reasonably could have asserted the basis for their *coram nobis* petition earlier, they have no valid justification for delaying pursuit of that claim." *Id.* (citing *Riedl*, 496 F.3d at 1006; emphasis in *Kroyter*). "The bar is high; *coram nobis* is not 'a free pass for attacking criminal judgments long after they have become final.'" *United States v. Faison*, 956 F. Supp. 2d 267, 270 (D.D.C. 2013) (quoting *Riedl*, 496 F.3d at 1004).[4]

Maasen filed his § 2255 motion one year after the Court imposed restitution on December 3, 2019, and requested that the motion be converted to a *coram nobis* petition on January 21, 2020. *See* Docs. 1, 6; CR Docs. 129, 142. Maasen states that he did not attack the restitution order on appeal due to the waiver in his plea agreement. Doc. 6 at 4; *see* CR Doc. 126 ¶ 7. Judge Burns noted, correctly, that an appeal waiver does not necessarily preclude a challenge to an unlawful sentence or restitution order. Doc. 18 at 6 (citing *United States v. Lo*, 839 F.3d 777, 786 (9th Cir. 2016) (appeal waiver not applicable where the defendant was not given a reasonably accurate notice of the

---

[4] Other circuits "have likewise reasoned that the validity of delay depends on whether the petitioner had a reasonable opportunity to present his claims earlier." *Kroytor*, 977 F.3d at 961 (citing *Ragbir v. United States*, 950 F.3d 54, 65 (3d Cir. 2020) (holding that "[w]hat matters" in determining whether delay is valid "is whether a claim can be reasonably raised"); *United States v. Castano*, 906 F.3d 458, 464 (6th Cir. 2018) (noting that "*coram nobis* relief is generally not appropriate for claims that could have been raised on direct appeal")).

restitution amount); *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (appeal waiver not applicable to an illegal sentence or a sentence that does not comport with the terms of the plea agreement); *United States v. Phillips*, 174 F.3d 1074, 1076 (9th Cir. 1999) (appeal waiver does not preclude a claim that the plea agreement is ambiguous as to losses subject to restitution)). Judge Burns found that Maasen, as a former lawyer with many years of criminal law experience, could have challenged the restitution order on appeal and has provided no valid reason for his failure to do so. *Id.* at 6-7. The Court agrees.

Maasen asserts that he believed the plea agreement barred a direct appeal from the restitution order. Doc. 19 at 4. But that belief was not correct, and Maasen otherwise provides no valid reason for waiting more than a year to seek *coram nobis* relief. *See* Doc. 18 at 6-7; *see also Kroytor*, 977 F.3d at 962 ("lack of clarity in the law is not itself a valid reason to delay filing a *coram nobis* petition").

Maasen's reliance on this Court's decision in *United States v. Christensen*, No. CR-14-08164-PCT-DGC, 2021 WL 185050 (D. Ariz. Jan. 19, 2021), is misplaced. *See* Doc. 19 at 4-5. The defendant in that case correctly argued that the Court had committed plain error in ordering restitution for back taxes outside of the tax years for which he was convicted. *Christensen*, 2021 WL 185050, at *4. Neither the prosecutor, the Court, nor his trial and appellate attorneys were aware of the error, and the attorney he hired to present his *coram nobis* arguments withdrew when his fees were garnished by the government. *Id.* That it took some time for the defendant to uncover the error was quite understandable given that he was acting pro se and neither the Court nor the attorneys in the case had discovered the error. *Id.*

Maasen's counsel raised multiple objections to the restitution amount. *See* Docs. 18 at 5-6, 20 at 3-4. In written objections to the presentence report, counsel argued that Maasen's conduct did not cause any actual loss to the SBA and the intended loss amount was limited to the value of certain assets Maasen had concealed. CR Doc. 115 at 1-2. Counsel reasserted the objections at sentencing and provided the Court with a

9

"couple different loss calculations that . . . are far more appropriate than the $1.392 million." CR Doc 141 at 4. The alleged restitution error in this case, unlike the one in *Christensen*, was known to Maasen at the time of his sentencing. As a former criminal law attorney, Maasen reasonably could have challenged the restitution order on direct appeal and has provided no valid justification for not doing so or for waiting more than a year to seek *coram nobis* relief. *Cf. Kroytor*, 977 F.3d at 962 (noting that the Ninth Circuit has found delay justifiable where a petitioner has discovered new evidence or the applicable law recently changed and petitioner therefore did not have a reasonable opportunity to present the issue on direct appeal).

Because Maasen reasonably could have attacked the restitution order earlier, but failed to do so, that failure is "fatal" to his request for the "extraordinary writ of error *coram nobis*." *Riedl*, 496 F.3d at 1006-07 (finding a *coram nobis* petition untimely where the petitioner asserted no valid reason for a 20-month delay); *see also Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983) (denying *coram nobis* petition as untimely where claim could have been raised earlier and there were no sound reasons for the delay). The Court will accept Judge Burns's finding that Maasen has failed to satisfy the second *Hirabayashi* requirement. Doc. 18 at 7.

### 3. Sufficient Adverse Consequences.

Maasen argues that his obligation to pay the SBA nearly $1.4 million constitutes an adverse consequence from the restitution order sufficient to satisfy the "case or controversy" prong of the *Hirabayashi* test. Doc. 6 at 4-5. Judge Burns agreed with the government that that the restitution order is not the sort of civil disability that can support the issuance of a *coram nobis* writ. Doc. 18 at 7 (citing *United States v. Sloan*, 505 F.3d 685, 698 (7th Cir. 2007)); *see* Doc. 12 at 6-7. Specifically, Judge Burns found that, "[a]s in *Sloan*, the restitution order is a 'sunk cost,' not a 'continuing disability' that supports the issuance of a writ." Doc. 18 at 8.

Maasen challenges more than one million dollars of restitution, arguing that he should not be required to pay this amount because it was imposed in violation of the plea

agreement's direct and proximate cause of loss requirement, and because the restitution order is contrary to the applicable restitution statutes, 18 U.S.C. §§ 3663 and 3663A. Doc. 6 at 4. The Court concludes that alleged restitution errors of this magnitude satisfy the case or controversy requirement of Article III. *See Christensen*, 2021 WL 185050, at *4 (same); *United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990) (*coram nobis* relief may be available where the adverse consequence is causing present harm, arises out of the erroneous conviction, and is more than incidental); *United States v. Shihadeh*, No. 03-CR-46, 2007 WL 325797, at *2 (E.D. Wis. Jan. 31, 2007) (same).

With respect to *Sloan*, the Seventh Circuit has recognized in other cases that a defendant may seek *coram nobis* relief from an unlawful restitution order. In *Barnickel v. United States*, 113 F.3d 704 (7th Cir. 1997), which the government cites in agreeing that a more usual remedy is not available (Doc. 12 at 10 n.2), the Seventh Circuit noted that "the unavailability of relief under § 2255 does not leave a deserving petitioner entirely without recourse [as the court has] approved the use of a writ of error coram nobis to challenge a restitution order that was based on inaccurate information." *Id.* at 706; *see Mischler*, 787 F.2d at 241 n.1 ("We believe that the fundamental unfairness of the district court in not considering the accuracy of the . . . audit upon which the restitution order was based warrants *coram nobis* consideration. . . . . [W]e are mindful of the *Morgan* Court's [statement] that, 'in behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief.'") (quoting *Morgan*, 346 U.S. at 505); *see also Kaminski v. United States*, 339 F.3d 84, 90 (2d Cir. 2003) ("To say that habeas challenges are restricted to those situations in which freedom from custody is at stake is not to foreclose other collateral attacks in some cases where lesser interests are involved. Indeed, the Seventh Circuit in *Barnickel* . . . has said that it is precisely in such cases that the writ of coram nobis may be used.") (Calabrasi, J., opining separately); *Nimkie v. United States*, No. CIV. 12-00350 JMS, 2012 WL 5590111, at *4 (D. Haw. Nov. 15, 2012) ("Although a § 2255 motion challenging a restitution award necessarily fails, the court recognizes that some authority allows – in limited situations –

such relief to be sought under a writ of error coram nobis.") (citing *Barnickel* and *Kaminski*). The Court recognizes that there is a split of authority on whether *coram nobis* relief is available to attack a restitution order, but concludes that such relief is available in this case. *See* Doc. 10 at 6 (noting that "[ineffective assistance of counsel] in connection with imposition of restitution, if established, can constitute error of the most fundamental character for *coram nobis* relief") (citing *Nimkie*, 2012 WL 5590111, at *5-6); *Christensen*, 2021 WL 185050, at *5 (noting that there is no Ninth Circuit case on point and the Court's reading of Supreme Court statements on the availability of *coram nobis* relief leads it to conclude that such relief is available to challenge restitution).

Maasen has met the third *Hirabayashi* requirement – the alleged unlawful restitution order constitutes an adverse consequence sufficient to create a case or controversy under Article III. The Court will reject the R&R on this point.

### 4. Error of the Most Fundamental Character.

Maasen asserts a violation of his Sixth Amendment right to effective assistance of counsel with respect to restitution. Docs. 2 at 2, 6 at 4-5. Although *coram nobis* relief is only available to correct errors of the most fundamental character, *see Hirabayashi*, 828 F.2d at 604, a claim of ineffective assistance of counsel may satisfy that requirement, and such a claim may be brought in a properly filed *coram nobis* petition. *See* Doc. 18 at 8 (citing *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995) (a defendant "may employ the rarely used writ of *coram nobis* to make a Sixth Amendment assistance of counsel attack on his conviction")).

#### a. Ineffective Assistance of Counsel.

To prevail on an ineffective assistance of counsel claim under the Sixth Amendment, a defendant must show both deficient performance and prejudice – that counsel's representation fell below the objective standard for reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686-88, 694 (1984). The defendant has the burden of proving his claim of ineffective assistance

and must overcome a "strong presumption that the representation was professionally reasonable." *Id.* at 689 (explaining that "[j]udicial scrutiny of counsel's performance must be highly deferential" because it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable"). The defendant also must show that "[t]he likelihood of a different result [is] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86 (2011) (citing *Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.") (internal citation omitted)). With respect to plea agreements and proceedings, the second prong of *Strickland* is satisfied where the defendant shows that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Maasen contends that the Court erroneously "used the estimate of 'intended loss' for sentence enhancement purposes of $1,392,000.00 to set the 'actual loss' for restitution purposes." Doc. 1 at 5. The SBA's actual loss amount, according to Maasen, should have been calculated "'based on the difference between what [the SBA] would have received if [he] had acted lawfully and disclosed all of his assets and the amount [the SBA] actually received." Doc. 2 at 3 (citing *United States v. Feldman*, 338 F.3d 212, 221 (3d Cir. 2003); *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007)). Maasen claims that his counsel rendered ineffective assistance by failing to present evidence showing that none of "the alleged related conduct was related to the crime of conviction or . . . proximately caused any actual loss to the SBA." *Id.* He further claims that there is a reasonable probability the restitution amount would have been different if his counsel had informed the Court of "the proper standard to apply in determining 'actual loss' for

restitution purposes and presented readily available bankruptcy authority and evidence on that issue[.]" *Id.* at 2; *see also* Doc. 3 ¶¶ 78-92 (describing the alleged restitution errors and claiming that the SBA suffered no actual loss from the crime of conviction or related conduct).

Because Maasen's counsel objected to the loss calculation in writing and on the record at sentencing, and argued Maasen's theory of actual loss under *Bussell*, Judge Burns concluded that Maasen has failed to show that his counsel's performance fell below an objective standard of reasonableness. Doc. 18 at 9; *see* CR Docs. 115 at 2-4 (objection to presentence report discussing *Bussell* and arguing that intended loss cannot exceed the value of certain concealed assets); 141 at 4 ("[M]y objection lays out our position [under *Bussell*] relatively well and I've also done a couple different loss calculations for the Court that we think are far more appropriate than the $1.392 million."). Maasen does not address his counsel's specific objections to the restitution amount under *Bussell*, suggesting only that "arguing the right case without providing the supporting evidence" constitutes a deficient performance. Doc. 19 at 9. The Court agrees with Judge Burns that Maasen has failed to show that his counsel's representation fell below the objective standard for reasonableness. *See Strickland*, 466 U.S. at 686.

Judge Burns further concluded that Maasen has failed to show prejudice given that he voluntarily agreed in his plea agreement to pay up to $1,392,000 in restitution to the SBA. Doc. 18 at 9; *see* CR Doc. 126 ¶ 3(d) ("defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $1,392,000 to the [SBA]"); *see also* CR Doc. 120 ¶ 72 (presentence report stating that "restitution in the total amount of $1,392,000 shall be ordered in this case"). Maasen does not address this issue in his objection, noting only that the "prejudicial impact on the amount of the Restitution Order [has] been briefed and supported by Petitioner's Verified Statement of Facts and Exhibits." Doc. 19 at 7; *see* Doc. 3. But incorporating arguments by reference is an ineffective objection to the R&R. *See McIntosh v. Richardson*, No. CV11-0702-PHX-DGC, 2011 WL 5519940, at *2 (D. Ariz. Nov. 14, 2011) ("The Court will deem

1  McIntosh's mere recitation of his earlier arguments ineffective.  This ruling comports
2  with the clear language of Rule 72(b) that a district judge 'shall make a de novo
3  determination of any portion of the magistrate judge's disposition to which *specific*
4  *written objection* has been made.'") (emphasis in original; alterations omitted); *Eagleman*
5  *v. Shinn*, No. CV-18-2708-PHX-RM (DTF), 2019 WL 7019414, at *5 (D. Ariz. Dec. 20,
6  2019) ("With respect to Ground Three, Petitioner similarly reasserts his claim in the
7  Petition, without explaining how the magistrate judge erred in his analysis and
8  recommendation regarding Ground Three.  Accordingly, the Objection does not identify
9  an issue for the Court to address on de novo review of the R&R."); *Quigg v. Salmonsen*,
10 No. CV 18-77-H-DLC-JTJ, 2019 WL 1244989, at *4 (D. Mont. Mar. 18, 2019)
11 ("Quigg's additional objections simply reassert claims previously made in his petition
12 and do not respond to Judge Johnston's findings and recommendations. As these
13 objections are not proper, this Court overrules them without further analysis.").

14      Judge Burns agreed with the government that the Third Circuit's decision in
15 *Feldman* is not controlling, and that *Bussell* expressly declined to fashion a categorical
16 rule for sentencing in bankruptcy fraud cases, noting that "limiting the loss to concealed
17 assets or income will not always reflect economic realities," especially where "a debtor
18 . . . engages in a lengthy, orchestrated scheme to defraud creditors."  Doc. 128 at 18
19 (quoting *Bussell*, 504 F.3d at 962); *see* Doc. 12 at 7 (same).  In his objection, Maasen
20 merely reasserts his argument that, under *Feldman* and *Bussell*, "[a]ctual loss in this case
21 equals the excess, if any, of (1) the loss the bankruptcy creditors incurred because of the
22 unlawful conduct, over (2) the loss the creditors would have incurred had [he] acted
23 lawfully."  Doc. 19 at 8; *see* Doc. 2 at 8 (citing *Feldman* and *Bussell* for the proposition
24 that actual loss is "determined by comparing what actually happened with what would
25 have happened if the defendant had acted lawfully"); Doc. 6 at 5 (the Court erred in
26 "failing to apply the '*Feldman/Bussell* test' to determine the amount of any actual loss").
27 Reasserting previously rejected arguments is not a proper objection to the R&R.  *See*
28 *Arroyo v. Harrington*, No. ED CV 10-0590 PSG, 2011 WL 1871132, at *1 (C.D. Cal.

May 17, 2011) ("Petitioner's Objections generally parrot and rehash the arguments made in the Petition, and lack merit for the reasons set forth in the [R&R].").[5]

The Court agrees with Judge Burns that Maasen has failed to establish a claim of ineffective assistance of counsel and his *coram nobis* petition therefore must be denied. *See* Doc. 18 at 12; *United States v. Flores*, No. 1:06cr292 JCC, 2013 WL 394711, at *3 (E.D. Va. Jan. 31, 2013) ("The Court concludes that Petitioner's motion must be denied because Petitioner cannot meet the performance prong of the *Strickland* test and, accordingly, cannot meet the [fourth] requirement for a writ of *coram nobis*."). The Court will accept the R&R in this regard.

### b.     The Alleged Fundamental Error.

Maasen claims in his *coram nobis* petition that the Court fundamentally erred in "failing to apply 'the *Feldman/Bussell* test' to determine the amount of any actual loss for restitution purposes . . . and [in making] no attempt to determine any amount of actual loss as required by law[.]" Doc. 6 at 5. Judge Burns found no error in this regard, explaining that the Court considered the detailed factual account of Maasen's financial transactions and expenses in the presentence report and found it evident that Maasen had "engaged in an elaborate and extensive fraud during the course of the bankruptcy which was designed to deprive the SBA of the funds that were owed to the SBA." Doc. 18 at 10-11; *see* CR Doc. 141 at 9. The relevant facts included Maasen's concealment of his ownership interest in the $1.2 million Red Rock and Silverleaf homes (CR Doc. 120 ¶¶ 12-18), the $90,000 engagement ring (¶¶ 19-20), the $130,000 membership at the Whisper Rock golf club and the $6,000 golf cart (¶¶ 21-22), and several luxury vehicles – a Porsche, a Maserati, a BMW, and a Mercedes – that Maasen had leased during the bankruptcy proceedings (¶ 22). CR Doc. 141 at 7-8. The Court also considered personal

---

[5] Judge Burns concluded that Maasen improperly seeks to relitigate the bankruptcy proceedings in disputing allegations in the dismissed counts and arguing that that the 2008 economic downturn, the valuation of his assets in bankruptcy, and the SBA's agreement to compromise the debt should have been considered in the actual loss calculation. Doc. 18 at 11. The Court agrees with that conclusion.

16

expenses Maasen had concealed from the bankruptcy court and his creditors – rental of a beachfront condominium in La Jolla, California, vacations to Las Vegas and Mexico, and thousands of dollars spent each month on clothes, food, and entertainment. *Id.* at 9 (citing CR Doc. 120 ¶¶ 21, 24).

"The Court – mindful of the extensiveness of [Maasen's] fraud, to include the many years of deceptive conduct charged in the twelve felony counts, and other evidence of record – made a reasonable estimate of the loss." Doc. 18 at 11 (citing U.S.S.G. § 2B1.1 n.3(c) ("The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference.")); *see also United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) (a district court must make only "a reasonable estimate of the loss, given the available information") (quoting *Bussell*, 504 F.3d at 960); *United States v. Sunchild*, 637 F. App'x 316, 317 (9th Cir. 2016) ("As $19,735.77 was a 'reasonable estimate' based on evidence supported by 'sufficient indicia of reliability,' the district court did not err.") (citing *Ali*, 620 F.3d at 1073); *United States v. Doe*, 488 F.3d 1154, 1161 (9th Cir. 2007) (upholding restitution amounts that were "supported by the record as reasonable estimates of the loss"); *United States v. Padilla*, No. 4:17-CR-00137-DCN, 2018 WL 4365494, at *1 (D. Idaho Sept. 13, 2018) ("[T]he determination of the restitution amount is by nature an inexact science, and . . . the court may accept a reasonable estimate of the loss based on the evidence presented.") (citations and quotation marks omitted).

Judge Burns notes, correctly, that the Court explicitly rejected Maasen's actual loss arguments at sentencing. Doc. 18 at 11. The Court provided this explanation:

> The *Bussell* case . . . does make clear that one way to measure [loss] is the lesser of either the discharged debt or the concealed assets, but *Bussell* also makes clear that's not the only way, and in . . . bankruptcy fraud cases, there may be other ways to approach the loss. I believe this is a complex bankruptcy fraud. We've covered several years, multiple transactions. It's more akin to the fraud in the *Bussell* case, in my view, than to the run-of-the-mill case mentioned in *Bussell*.

17

> And I do not believe that the concealment at issue is limited to the three assets that are used to calculate the loss in the defense memorandum, namely the engagement ring, the golf cart, and the Silverleaf home.
>
> . . .
>
> All of this persuades me that the nondisclosures were much more extensive than the three assets described in the objection to the presentence report. And the question then becomes how best to attach a value to the concealment. That's difficult to do. But it is evident to me that the defendant engaged in an elaborate and extensive fraud during the course of the bankruptcy which was designed to deprive the SBA of the funds that were owed to the SBA.
>
> And in light of that, I conclude that a reasonable estimate of the intended loss is the 1,392,000-dollar number that the presentence report uses. That's the value of the SBA loan less payments that were made.

CR Doc. 141 at 7-9. Because Maasen has not shown that the Court committed error of the most fundamental character in calculating the restitution amount, he has failed to meet the fourth *Hirabayashi* requirement. *See* Doc. 18 at 12.

Maasen's reliance on *Christensen* is misplaced. Doc. 19 at 6-7. The defendant in that case was convicted by a jury of multiple tax-related offenses. The Court partially granted his *coram nobis* petition because it had erred in including more than one million dollars in the restitution amount for back taxes in years not covered by the defendant's conviction. *Christensen*, 2021 WL 185050, at *8; *see Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that federal courts may order restitution under the Victim and Witness Protection Act "only for the loss caused by the specific conduct that is the basis of the offense of conviction."); *United States v. Batson*, 608 F.3d 630, 636 (9th Cir. 2010) ("The natural reading of [the restitution statutes] is that restitution is authorized for the offense of conviction and not for other related offenses of which the defendant was not convicted.") (citing 18 U.S.C. §§ 3663(a)(1)(A) and 3663A(a)(1)).

Maasen, unlike the defendant in *Christensen*, pled guilty and "[s]pecifically agree[d] to pay full restitution, *regardless of the resulting loss amount*[.]" CR Doc. 126 ¶ 3(d) (emphasis added). He further agreed to pay full restitution "to all victims directly

or proximately harmed by [his] 'relevant conduct,' including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, *regardless of whether such conduct constitutes an 'offense' under 18 U.S.C. §§ 2259, 3663, or 3663A.*" *Id.* (emphasis added). As Judge Burns noted, § 3663(a)(3) provides that the Court may "order restitution in any criminal case to the extent agreed to by the parties in the plea agreement." Doc. 18 at 2 n.3; *see Nimkie*, 2012 WL 5590111, at *2 (a court is not precluded "from ordering restitution that . . . is agreed to by the parties in a plea agreement") (citing § 3663(a)(3)); *Pabst v. United States*, No. 09 CR. 269, 2014 WL 6896005, at *6 (S.D.N.Y. Dec. 5, 2014) (noting that Congress amended the Victim and Witness Protection Act in 1990 to include § 3663(a)(3) in order "to clarify the scope of *Hughey* as allowing restitution beyond the offense of conviction 'when the defendant agrees to such in a plea agreement'") (citing *United States v. Silkowski*, 32 F.3d 682, 688-89 (2d Cir. 1994)); *United States v. Sanders*, 52 F. Supp. 3d 1329, 1334 n.3 (N.D. Ga. 2014) ("Congress later amended the VWPA by adding § 3663(a)(3), authorizing sentencing courts to award restitution to the extent agreed upon by the parties in a plea agreement, even if beyond those acts for which the defendant was convicted."); *United States v. O'Toole*, 188 F.3d 520 (10th Cir. 1999) (restitution is confined to the loss caused by the specific conduct that is the basis of the offense of conviction, "[e]xcept to the extent agreed to by the parties in a plea agreement, *see* 18 U.S.C. § 3663(a)(3)").[6] The Court did not err in ordering Maasen to pay $1,392,000 to the SBA – restitution to which he specifically agreed. *See* CR Doc. 126 ¶ 3(d). Maasen has failed to establish the fourth *Hirabayashi* requirement.

### D.     Certificate of Appealability and Leave to Proceed In Forma Pauperis.

Judge Burns recommends denying a certificate of appealability and leave to proceed in forma pauperis on appeal. Doc. 18 at 12. Maasen does not object to this recommendation. *See* Doc. 19. The Court will deny a certificate of appealability and

---

[6] *See also* 18 U.S.C. § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.").

19

leave to proceed in forma pauperis on appeal because Maasen has made no showing of the denial of a constitutional right and no reasonable jurist would find the Court's denial of Maasen's *coram nobis* petition debatable or wrong. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IV.  Conclusion.**

Maasen has failed to state an ineffective assistance of counsel claim under *Strickland*. He also has failed to establish two of the *Hirabayashi* requirements for *coram nobis* relief – that he has a valid reason for not attacking the restitution order earlier and that the Court fundamentally erred in determining the restitution amount. The Court will accept Judge Burns's recommendations that the *coram nobis* petition be denied without a certificate of appealability and without leave to proceed in forma pauperis on appeal.

**IT IS ORDERED:**

1.  Judge Burns's R&R (Doc. 18) is **accepted in part** and **rejected in part** as set forth in this order.

2.  Maasen's petition for writ of error *coram nobis* (formerly a § 2255 motion) (Docs. 1, 6; CR Doc. 142) is **denied**.

3.  A certificate of appealability and leave to proceed in forma pauperis on appeal are **denied**.

4.  The Clerk is directed to enter judgment and **terminate** this action.

Dated this 11th day of May, 2021.

David G. Campbell
Senior United States District Judge